IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

GLORIA D. SMITH,

    Plaintiff,

v.                                Civil Action No. 3:08cv574

ESTES EXPRESS,
et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket Number 21). For the reasons set forth below, that motion will be granted.

### I. STATEMENT OF FACTS

Gloria D. Smith, was employed by the Estes Express Lines ("Estes"), from April 25, 2003 until January 25, 2007. (Transcript of Deposition of Gloria D. Smith ("Smith Tr.") at 22, 31.)[1] Smith, an African-American female, was initially hired as a part-time billing clerk at the Richmond terminal and worked in that capacity until May 4, 2004. (Id. at 23-24.) Smith was thereafter promoted to non-salaried Night Supervisor of Billing

---

[1] The citations for the facts set forth in this section come mostly from various statements made by Smith in her deposition or pleadings. Unless otherwise noted, these statements are undisputed. (See Def. Mem. at 2-20.)

Clerks and transferred to the Norfolk Terminal, in which capacity she was employed until her termination. (Id. at 23-24, 26, 31.)  That termination decision was made by Legree Oswald, a while male who is Estes' regional manager, based on various reports of disciplinary problems with Smith. (Id. at 86-87.)  It is that termination and a written disciplinary warning that preceded it that Smith claims to be the basis for her discrimination and retaliation claims. (Id. at 56-58.)

Estes issued a mandate to its employees in 2006 to reduce hours worked by hourly employees in order to cut labor costs because of a decrease in revenue caused by a decline in the freight business, Estes' main source of revenue. (Id. at 104.) At the meeting announcing this policy, Estes ordered Smith to reduce her weekly hours from forty or more to thirty-seven-and-a-half. (Id. at 105.)  Smith was evidently given a raise to compensate her for her lost overtime and hours. (Id. at 26-28, 30-31.)

Notwithstanding the directive from Estes' management, Smith continued to work overtime regularly. (Id. at 124-25, 130.) Smith proffers excuses for her overtime hours, largely staffing issues, but does not dispute that those hours were billed. (Pl. Mem. at 7.)  The violations of this policy by Smith prompted Estes' management to require Smith to sign a statement

2

indicating that she understood the company's policy respecting overtime. (Smith Tr. at 122; Def. Mem. at Ex. D.) According to Estes, Smith was the highest-billing office worker in the Norfolk office; Smith does not dispute this, but does point out, reasonably, that she was the only full time employee in the office during the relevant time period. (Smith Tr. at 129-30; Pl. Mem. at 7.)

David Jones, the night Operations Manager at the Norfolk Office, reported Smith's overtime abuse to management. (Smith. Tr. at 133-34.) Jones, who also is African-American, also reported to management that Smith would send other employees home early and steal their work in order to justify her overtime billing. (Id.) Smith disputes these allegations, arguing that they were made as a result of a personal vendetta against her on the part of Jones, for which assertion Smith has provided no evidence. (Pl. Mem. at 7-8.) In any event, Smith agrees that, if Jones' allegations were true, her conduct would represent the terminable offenses of theft and dishonesty. (Smith Tr. at 201-202.) This conclusion is supported by the Estes employee code of conduct, which Smith admits to having signed. (Id. at 96; Def. Mem. at Ex. B.)

Jones and other members of Estes' management held a meeting with Smith on January 15, 2007 to discuss the situation with

3

Smith's overtime hours. (Smith Tr. at 202, 207.[2])   At that meeting, Smith neither acknowledged her violation of the billing rules nor agreed to comply with them. (Id. at 207.)   Jones later reported that Smith had become agitated during the meeting, was disrespectful to Estes' management, and made a vulgar and improper racial remark upon leaving the meeting. (Id. at 211-12.)   Smith disputes the underlying allegations made by Jones, but does not dispute that these allegations were conveyed to Oswald and that, if true, they constituted a firing offense. (Id. at 211-13.)

It also is undisputed that Norfolk terminal manager Donnie Moore and Oswald received from other employees numerous other complaints about Smith during 2006 and early 2007. (Def. Mem. at 6.)   Smith has a variety of responses to these allegations, but, essentially, she contests the validity of the underlying complaints while not disputing that those complaints were made to Moore, and conveyed by him to Oswald. (Pl. Mem. at 9-11;

---

[2] Smith's exact position on this issue is difficult to decipher, but it appears that she doesn't deny that her "high bill count" was discussed at the meeting. (See Smith Tr. at 218; Pl. Mem. at 2, 12.)   In any event, the evidence rather clearly indicates that Smith's billing practices were discussed. (See Def. Mem. at Exs. N ¶ 8, O ¶ 6.)

Smith Tr. at 144-45.[3])   The complaints addressed in the briefing are:

- Chanda Murphy, a billing clerk who worked with Smith and complained that Smith was aggressive, difficult to work with, and would steal bills from Murphy's desk. (Smith. Tr. at 166-67.)

- Kim Stickles, a billing clerk who worked with Smith, complained that Smith would nitpick her work, scream at her regularly, and make inappropriate, racially-tinged remarks. (Id. at 169-70.) Stickles also stated that Smith said that she would "get her 40 hours in and there was nothing [Estes's Management] could do about it." (Def. Mem. at Ex. M ¶ 11.)

---

[3] Smith also contends that these complaints were not made to Oswald until after the adverse employment actions were taken against her. (Smith Tr. at 174; Pl. Mem. at 10-11.)   This contention appears to derive from a misunderstanding on the part of Smith - while it is true that the complainants made written statements memorializing their complaints in July of 2007, after Smith's termination, those statements were composed in response to Smith's EEOC complaint and collected by Estes' human resources department. (See Def. Rep. at Ex. B ¶ 4.)   However, the evidence is clear that the original complaints were made before Smith's termination, and Smith has offered no evidence rebutting that conclusion. (See id.; Def. Mem. at Ex. M ¶¶ 9-16; Ex. N at ¶¶ 9-17.)   Smith also alleges that these complaints were coerced, but provides no evidence to support that assertion. (Pl. Mem. at 8.)

- Jones, mentioned above, complained to Moore that he regularly ordered Smith to comply with Estes' directives concerning billable hours and that Smith refused to comply. (Id. at 12.)  Jones also reported to Oswald that Smith was combative, made inappropriate racial remarks, and stated that she would refused to follow the orders of the night manager, Earl Chinn. (Id.)

- Chinn himself complained to Moore that Smith had conflicts with essentially every other employee, and stated that he was "not old enough to tell her what to do." (Smith Tr. at 174.)  Chinn also reported that Smith referred to the Caucasian employees as "you people." (Id.)

- Liz Seyler, a receptionist, complained to Moore that Smith was a racist and not a team player and also that Smith had confronted Seyler, alleging that Seyler had reported to management that Smith was "riding the clock." (Id. at 167-68.)

- Mary Crutchfield, a billing clerk, complained to Assistant Terminal Manager Beeler, who relayed her complaints to Moore and Oswald, that Smith regularly stole work from her. (Id. at 164-66.)

Smith does not allege that any of these complaints were motivated by racial animus or provide any circumstantial evidence suggesting that they were. (Id. at 152-53; Def. Mem. at 9-11.)

Based on these complaints and Smith's refusal to adhere to the company's overtime mandate, Moore issued a "final written warning" to Smith on January 18, 2007. (Smith Tr. at 228; Def. Mem. at Ex. N ¶ 16.)  Smith wrote a rebuttal to the warning and submitted it to management the next day. (Smith Tr. at 228; Def. Mem. at Ex. G.)  After the meeting during which the warning was presented to Smith by Moore, Beeler, and Jones, Smith requested that her coworkers write letters of support for her and give them to management. (Smith Tr. at 182.)  The only coworker to write a letter was Stickles, who stated that Smith caused a great deal of tension in the office and was detrimental to productivity. (Id. at 185-86; Def. Mem. at Ex. H.)

In light of the complaints about Smith, her misconduct during the January 15 and 18, 2007 meetings, and Stickles' letter, Oswald met with Smith on January 25, 2007. (Def. Mem. at Ex. M ¶ 18.)  Moore, Beeler, and Jones were also present. (Smith Tr. at 254.)  Smith concedes that Oswald's proffered bases for the meeting could be correct, and that the reported offenses, if

7

believed by Oswald, were grounds for termination. (Id. at 138, 157, 218-19.)

The meeting on January 25 lasted approximately an hour and forty-five minutes. (Id. at 256-57.)   During the meeting Smith took a confrontational attitude. (Id.)   Smith refused to admit any wrongdoing or accept responsibility for the actions alleged in the written warning. (Id. at 258.)   Smith, however, presented no evidence to Oswald that would tend to rebut the accusations she faced. (Id. at 274.)   Oswald also discussed Smith's insubordinate attitude toward Chinn and the contents of the written warning during the meeting. (Id. at 34-35, 258.)   When Smith refused to accept responsibility for the accusations and conduct discussed above, Oswald decided to terminate her employment. (Id. at 266; Def. Mem. at Ex. M ¶ 21.)   A written separation agreement was completed the same day. (Smith Tr. at 276-77.)

Less than a week after her termination, Smith contacted the Equal Employment Opportunity Commission ("EEOC"). (Id. at 336-37.)   After sharing materials with the EEOC, Smith filed a formal complaint on May 16, 2007. (Id. at 35-36.)   In the complaint, Smith alleged that she was discharged because of her race and because of her complaints about racial discrimination. (Def. Mem. at Ex. K.)   The EEOC investigated the claim and then

8

dismissed her charge, but issued her a "right to sue" letter. (Id. at Ex. L.)  Smith then filed this action.

In her Complaint, Smith alleges four violations: race discrimination in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII"), age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 601 et seq. ("ADEA"), retaliatory discharge as described in Title VII, 42 U.S.C. § 2000e-3, and race discrimination in violation of the Virginia Human Rights Act, Va. Code Ann. § 2.2-2639.B ("VHRA").[4]  Estes has now moved for summary judgment on each of those claims. (Def. Mem. at 1.)  Smith has responded, the parties presented oral argument, and the motion is ready for decision.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact in the case.  See Fed. R. Civ. P. 56(c).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  See Matsushita Elec. Indus. Co. v.

---

[4] Smith is proceeding pro se in this matter. Therefore, the Court will liberally interpret all of her filings and evidentiary proffers where possible. See Estelle v. Gamble 429 U.S. 97, 106 (1976) (pro se documents are to be liberally construed); Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir. 1994) (holding same).

Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   A material

fact in dispute appears when its existence or non-existence

could lead a jury to different outcomes.   See Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A genuine issue

of material fact exists when there is sufficient evidence on

which a reasonable jury could return a verdict in favor of the

non-moving party.   See id.

Hence, summary judgment is only appropriate when, after

discovery, the non-moving party has failed to make a "showing

sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden

of proof at trial."   Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986).   When a motion for summary judgment is made, the

evidence presented must always be taken in the light most

favorable to the non-moving party.   See Smith v. Virginia

Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996).

Nevertheless, a party cannot "create a genuine issue of

material fact through mere speculation or the building of one

inference upon another."   Beale v. Hardy, 769 F.2d 213, 214 (4th

Cir. 1985).   Accordingly, the party who bears the burden of

proof at trial cannot survive summary judgment without

sufficient evidence to sustain his or her burden of proof on

that point.   Celotex Corp., 477 U.S. at 327.

10

## B. The VHRA Claim

As noted above, Smith claims that her termination was based on racial animus, in violation of the VHRA. (Compl. at 1.)   The VHRA provides, in relevant part, that "[n]o employer employing more than five but less than 15 persons shall discharge any such employee on the basis of race." Va. Code. Ann. § 2.2-2639(B).   A claim does not lie under the VHRA unless the employer employs between 6 and fourteen individuals. See Blankenship v. City of Portsmouth, 372 F.Supp.2d 496, 501 (E.D.Va. 2005) (citing Conner v. National Pest Control Assoc., Inc., 257 Va. 286, 289, 513 S.E.2d 398 (1999)).

Estes has proffered evidence, which Smith does not dispute, that it employs far more than fourteen individuals. (Def. Mem. at Ex. M ¶ 6.)   Therefore, summary judgment will be granted for Estes on Smith's VHRA claim.

## C. The Title VII Race Discrimination Claim

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Title VII "makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens."   St. Mary's Honor Ctr. v. Hicks, 509 U.S.

11

502, 526 (1993).   To prevail on a claim for race discrimination, the plaintiff must prove that an adverse employment action was taken against her and that the adverse employment action was, at least in part, motivated by her race. See O'Malley, Grenig, & Lee, 3C Federal Jury Practice and Instructions, § 171.20 (5th ed. 2000).

A claim that Title VII has been violated by racial discrimination may be proven in two ways: through a showing, made by direct or circumstantial evidence, that race was a motivating factor in the adverse employment decision, or through the burden shifting framework created in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 317-18 (4th Cir. 2005).[5]   Smith contends that she was subject to two adverse employment actions: (1) the termination of employment; and (2) the written warning.

---

[5]   Smith's claims against Robey Estes and Donnie Moore as individual, personal defendants (i.e., not in their professional capacities) must be dismissed.   See Lissau v. Southern Food Service, Inc., 159 F.3d 177, 180 (4th Cir. 1998) (no individual liability for Title VII violations); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir.1994) (no individual liability for ADEA violations).   Furthermore, neither of these individuals were named in Smith's EEOC complaint, so they cannot now be the subject of her suit filed under the EEOC's right to sue letter. See Causey v. Balog, 162 F.3d 795, 800-01 (4th Cir. 1998). Smith may continue to press her Title VII and ADEA claims against Estes Corp., however.

1. **Direct or Circumstantial Evidence of Discrimination: The Termination and the Written Warning**

"A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." Id. at 318. Thus, if the plaintiff does not put forth sufficient evidence to demonstrate that race was a motivating factor in the employer's decision to take an adverse employment action, the court should grant summary judgment to the employer. See id. at 319. The subjective beliefs of the plaintiff, without more, are insufficient to create a genuine issue of material fact respecting discriminatory intent. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 134-35 (4th Cir. 2002).

Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006) (quoting Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999)). Even if an apparently discriminatory statement or conduct exists, it does not create direct evidence of discrimination unless it has a nexus with the

13

employment decision. <u>See</u> <u>id.</u>  Smith has set forth no direct evidence of discrimination.  Neither of the two racially insensitive remarks proffered by Smith (Kevin Zischler's "Aunt Jemima" comment and Chinn's "Jim Crow" comment) had any nexus whatsoever with Smith, her written warning, or her termination. (Smith Tr. at 302, 309.[6])  Indeed, the remarks were not even made by the individuals who Smith has conceded were the relevant decision makers - Jones and Oswald. (<u>Id.</u> at 86-87.)  Therefore, neither of these remarks had the required nexus to the employment action to constitute direct evidence of discrimination.

When evaluating whether the plaintiff has proffered sufficient circumstantial evidence to sustain her claims in the face of a summary judgment motion, the court should consider whether, as a whole, the plaintiff has "presented probative circumstantial evidence to show that [the employer] acted with discriminatory animus." <u>Warch</u>, 435 F.3d at 521.  Smith makes

---

[6] To the extent that Smith might attempt to raise a hostile work environment claim based on these statements, that claim would clearly fail, because two isolated comments are insufficient to demonstrate that the comments were "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." <u>Gilliam v. South Carolina Dept. of Juvenile Justice</u>, 474 F.3d 134, 142-43 (4th Cir. 2007); <u>see also</u> <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998) (noting that isolated incidents of abusive language will generally not meet requisite threshold of severity or pervasiveness).

several allegations that conceptually might be circumstantial evidence to support her claims of discrimination, but none of those allegations are founded on actual evidence; instead, they are one and all based on pure accusation and speculation. And, such allegations are insufficient to sustain a claim of discrimination past the summary judgment stage. See id. at 515-16, 521; Bryant, 288 F.3d at 134-35.

Smith's circumstantial case is based on assertions that other African-American workers at Estes were subject to racial discrimination. Those assertions are not supported by proof. Specifically:

- Smith alleges that Adolphalus Davis was demoted because of his race, but provides no evidence to support that allegation. (Pl. Mem. at 5.)

- She also alleges that three African-American employees – Mike Kitrell, Elvis Alexander, and Jewel Scott – were terminated because of their race. (Id.) Smith provides no evidence supporting these claims.

- Smith argues that Earl Chinn was promoted over a African-American worker known as "Pearly," but provides no evidence that the promotion occurred or that it was racially motivated. (Id.)

15

- Smith asserts that all the African-Americans felt that they were the targets of a discriminatory attempt to remove all African-American workers from the Norfolk terminal, particularly those that "are vocal," but provides no evidence to support this assertion. (Id.)

- Smith charges that Caucasian employees were not disciplined for rudeness and insubordination to African-American employees, but provides no evidence of either the underlying activity or disparity in discipline. (Id.)

Because these allegations are founded only on allegations and inferences, they are insufficient to sustain her discrimination claims based on either the termination of employment or the written warning. See Warch, 435 F.3d at 515-16, 521.

## 2. McDonnell Douglas Framework

### a. Termination

The second method of proving a Title VII race discrimination claim is the McDonnell Douglas burden shifting framework. See Diamond, 416 F.3d at 317-18. The first step in that framework requires the plaintiff to provide enough evidence

16

to support a <u>prima facie</u> case of discrimination. <u>Holland v.</u> <u>Washington Homes, Inc.</u>, 487 F.3d 208, 213-14 (4th Cir. 2007). To support a <u>prima facie</u> case on a termination claim, the plaintiff must demonstrate that:

> (1) [she] is a member of a protected class; (2) [she] suffered adverse employment action; (3) [she] was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

<u>Id.</u> at 214. Smith has met the first two components of the <u>prima facie</u> case: as an African-American, she is a member of a protected class, and her termination qualifies as an adverse employment action. <u>Id.</u>[7]

Smith's <u>prima facie</u> case of the termination claim fails, however, on the third component because she has provided no evidence that she was meeting her employer's legitimate expectations. <u>See</u> <u>King v. Rumsfeld</u>, 328 F.3d 145, 149 (4th Cir. 2003). On the other hand, Estes has provided a substantial quantum of evidence demonstrating just the opposite. The several complaints about Smith, together with her documented disregard of the overtime policy, demonstrate that Smith was not

---

[7] Smith's discrimination claim respecting her written warning will be analyzed in the next section. <u>See</u> Section II.C.2.b, <u>infra</u>.

meeting expectations. (Def. Mem. at 24.) Smith's protestations to the contrary, unsupported by any proof, are insufficient to overcome Estes' evidence on this point. See King, 328 F.3d at 149. Therefore, Smith's prima facie termination case fails on the third component.

Smith's termination claim also fails on the fourth component. To meet the fourth component of the prima facie case in a Title VII termination claim, the plaintiff must show that her former position remained open or was filled by to similarly qualified applicants. See Causey, 162 F.3d at 802. If an individual is terminated, but the employer does not seek to fill the position and, instead, simply redistributes the position's duties to others, then the fourth element is not satisfied. See id.; see also Swift v. Montgomery County Public Schools, 2001 WL 650710, *7 (D.Md. 2001) (not reported). The undisputed evidence shows that Estes never attempted to fill the position, and simply distributed Smith's duties to other already-employed individuals. (Def. Mem. at 25.) Therefore, Smith's claim fails on the fourth component, as well.

If, however, it is assumed that Smith had made out a prima facie case of race discrimination in respect of her termination (which she has not), the next step in the McDonnell-Douglas formulation is to require the employer to articulate a

18

legitimate, nondiscriminatory reason for the termination. See
Holland, 487 F.3d at 214. A significant and documented history
of disciplinary problems is an accepted nondiscriminatory reason
for a termination. See Hill v. Lockheed Martin Logistics
Management, Inc., 354 F.3d 277, 292-98 (4th Cir. 2004). Estes
has demonstrated a history of disobedience of the company
overtime policy, and, as discussed above, Smith does not dispute
that the various complaints about her on-the-job conduct were
made by other employees and that those complaints, if accepted
as true by management, constituted a reason for her termination.
Estes, thus, has met this requirement.

After the employer articulates a legitimate,
nondiscriminatory reason for the termination, the burden passes
back to the plaintiff to provide evidence demonstrating that the
proffered reason for the termination was a pretext. See Holland,
487 F.3d at 214. Smith, of course, may rely on all evidence in
the record including prima facie case evidence to meet her
burden. However, as explained previously, Smith has tendered
nothing other than allegations and conjecture to demonstrate a
discriminatory intent on the part of Estes, and there simply is
no evidence of pretext. Hence, Smith's claim that she was
terminated because of her race fails under the McDonnell Douglas
burden shifting framework.

19

### b. Written Warning

The plaintiff's burden in demonstrating a <u>McDonnell Douglas</u> <u>prima</u> <u>facie</u> case of discrimination respecting her disciplinary letter is somewhat different.[8]  <u>See</u>  <u>Lightner   v.   City   of</u> <u>Wilmington, N.C.</u>, 545 F.3d 260, 264-65 (4th Cir. 2008).  To succeed on a claim of discrimination by virtue of disparate discipline under the <u>McDonnell Douglas</u> framework, the plaintiff must show that: "(1) plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person." <u>Id.</u>

Smith has produced no evidence that employees of another race who engaged in the same prohibited activities as she did. (<u>See</u> Def. Rep. at 16-17.)  Indeed, Smith herself stated that she knew of no such individuals. (Smith Tr. at 275.)  Smith has not identified any similarly-situated individuals; and thus, she obviously has not been able to compare the disciplinary measures taken against them with those taken against her.  Consequently,

---

[8]    As explained previously, Smith's disparate discipline discrimination claim (based on the written warning) by way of the direct or circumstantial evidence mode of proof has failed. <u>See</u> Section II.C.1, <u>supra</u>.

20

she has failed on both components of the McDonnell Douglas prima facie case for a disparate discipline claim.

However, if it is assumed that a prima facie showing of disparate discipline had been made (which it was not), the McDonnell Douglas analysis of discrimination as to disparate discipline then continues in the same method as that of a termination. See Moore v. City of Charlotte, N.C., 754 F.2d 1100, 1106 (4th Cir. 1985). As explained above, Estes has articulated a legitimate, nondiscriminatory reason for the discipline Smith was given, and Smith has failed utterly to refute, or to cast doubt on, it. See Section II.C.2.a, supra. Therefore, Smith's claim based on racially disparate discipline fails, as well.

**D. ADEA Claims**

The ADEA's core provision, codified at 29 U.S.C. § 623, prohibits employers from discriminating based on an individual's age when the individual is at least 40 years of age but less than 65 years of age. Estes argues that Smith's ADEA argument should fail because she did not raise the claim before the EEOC, and therefore she has not exhausted her administrative remedies respecting that claim. (Def. Mem. at 21.)

The Fourth Circuit has held that "the scope of the civil action is confined only by the scope of the administrative

21

investigation that can reasonably be expected to follow the charge of discrimination." Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005) (internal quotations omitted). Therefore, to prosecute a civil action for discrimination, the claims in the action must be "reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation." Id. (internal quotations omitted). Smith's EEOC complaint makes no reference to age discrimination, nor does the right to sue letter from the EEOC. (See Def. Mem. at Exs. K, L.) Furthermore, there are no facts apparent from the record that would create any sort of relationship between the age and race claims. Therefore, Smith's ADEA claim is dismissed for failure to exhaust her administrative remedy on that claim. See Miles, 429 F.3d at 491-92.

## E. Retaliation Claim

Title VII also prohibits an employer from taking adverse employment actions against individuals who have

> opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Claims alleging that an employer has taken action in violation of this section are referred to as "retaliation" claims. See King, 328 F.3d at 150-51.

22

To succeed on a retaliation claim, the plaintiff must prove that: (1) she engaged in protected conduct; (2) she was subjected to an adverse employment action that occurred after that conduct; (3) the protected conduct was a motivating factor in the employer's decision to take the adverse employment action. See O'Malley, Grenig, & Lee, 3C Federal Jury Practice and Instructions, § 171.25 (5th ed. 2000). Retaliation claims are provable by the same two modes as substantive discrimination claims: the McDonnell Douglas burden shifting framework or direct or circumstantial evidence of discrimination. See King, 328 F.3d at 150-51 (applying McDonnell Douglas framework).

Smith initially alleged that her termination was, at least partially, in retaliation for her telephone call to what she thought was Estes' human resources department, which was mistakenly directed to the operations department. (Smith Tr. at 98.) In her response brief, Smith belatedly asserts that her termination was in retaliation for her rebuttal letter to the January 18, 2007 written warning, which response contained allegations of racist remarks. (Pl. Mem. at 5.)

In her deposition, Smith testified that her only claimed protected activity was her misdirected call. (Smith Tr. at 55.) The Fourth Circuit has held that a party cannot create a genuine issue of material fact simply by making an assertion that

23

contradicts earlier deposition testimony. See <u>Hernandez v.</u>
<u>Trawler Miss Vertie Mae, Inc.</u>, 187 F.3d 432, 438 (4th Cir.
1999). Therefore, Estes' motion for summary judgment respecting
Smith's claim of retaliation based on her rebuttal letter
rightly will be granted on that basis. Nonetheless, the Court,
in the interest of judicial efficiency, will assess that claim
on the merits.

## 1. The <u>McDonnell Douglas</u> Analysis: Retaliation

The <u>McDonnell Douglas</u> burden shifting framework operates in
essentially the same manner in the retaliation context as it
does in the arena of substantive discrimination. See <u>King</u>, 328
F.3d at 151. The elements of the <u>prima</u> <u>facie</u> case of
retaliation are that

> (1) she [had] engaged in protected activity; (2)
> the employer took adverse employment action
> against her; and (3) a causal connection existed
> between the protected activity and the asserted
> adverse action.

<u>Id.</u> If the plaintiff establishes a <u>prima</u> <u>facie</u> case, the rest
of the <u>McDonnell Douglas</u> framework acts the same as in the
substantive discrimination context. See <u>id.</u>

As an initial matter, it does not appear that Smith's
telephone call qualifies as protected activity. Title VII's
antiretaliation provisions certainly protect against complaints
about age or race discrimination, but they do not protect

24

against complaints of work conditions that are not based on that sort of discriminatory motive. See Jordan v. Alternative Resources Corp., 458 F.3d 332, 340-43 (4th Cir. 2006). Nothing in the record indicates that race or age discrimination was a topic discussed during Smith's telephone call. (See Smith Tr. at 225-27.) Smith's admission at oral argument confirms that Smith cannot sustain a discrimination claim based on the call because it was not protected activity.

Indeed, even if that call related to whether a supervisor should talk to a receptionist about another employee contained a protected complaint, nothing in the record indicates that Oswald was made aware of the call or its contents. To prove the element of causation, the plaintiff must demonstrate that the decisionmaker actually knew about the protected activity when deciding to take the adverse employment action. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). Therefore, Smith's prima facie case also fails on the element of causation with respect to the telephone call.

Unlike the telephone call, Smith's rebuttal to her written warning does make a reference, though somewhat obliquely, to race discrimination. (Def. Mem. at Ex. G.) Therefore, it qualifies as protected activity. See Jordan, 458 F.3d at 340-43.

25

Further, after the letter, Estes certainly took adverse action against Smith - she was terminated.   Therefore, Smith has met the first two elements of the <u>prima</u> <u>facie</u> case respecting retaliation based on her letter. <u>See</u> <u>King</u>, 328 F.3d at 151.

Nonetheless, Smith's <u>prima</u> <u>facie</u> case still fails because she has not provided evidence of causation. <u>See</u> <u>id.</u>   There is no evidence in the record that Oswald ever received her rebuttal, which was delivered to Moore.   Oswald does state that he reviewed the written warning itself, and Stickles' letter makes no mention of Smith's rebuttal. (<u>See</u> Def. Mem. at Ex. M ¶ 18.) Furthermore, Moore himself does not state that, at any point, he delivered Smith's letter to Oswald. (<u>Id.</u> at Ex. N.)   This conclusion is further buttressed by Smith's deposition testimony concerning her meeting with Oswald, during which she acknowledges the rebuttal letter was never addressed. (Smith Tr. at 264-74.)   The only support for Smith's causation claim, therefore, is accusation and speculation, which cannot suffice in a summary judgment context. <u>See</u> <u>Dowe</u>, 145 F.3d at 657. Indeed, even assuming that the Court could infer that Oswald received the rebuttal (which, in this record, it cannot), Smith still has not made any showing that the rebuttal was the cause of her termination. <u>Bryant</u>, 288 F.3d at 134-35.   Smith has

26

therefore failed to demonstrate a prima facie case for
retaliation.

Even assuming that Smith had demonstrated a prima facie
case, her retaliation claim would still fail under the McDonnell
Douglas analysis, because Estes has articulated an unrebutted,
legitimate reason for Smith's termination. See Section II.C.2.a,
supra. Smith's only response to that articulation is further
speculation and inference. Therefore, even assuming that Smith
successfully had made a prima facie showing, her retaliation
claim would still fail. See King, 328 F.3d at 151-52.

## 2. Direct or Circumstantial Evidence: Retaliation

If the plaintiff relies on the direct or circumstantial
evidence mode of proof, it is necessary that the evidence "both
reflect[s] directly the alleged discriminatory attitude and . .
. bear[s] directly on the contested employment decision."
Kubicko, 181 F.3d at 553. Proffered evidence of retaliatory
discharge should be considered as a whole, and there must be a
nexus between the evidence of discriminatory intent and the
adverse action. See id.

As explained above, Smith has conceded that her telephone
call did not contain an allegation of prohibited discrimination.
Hence, she has not provided adequate direct or circumstantial

evidence of discrimination on that point. <u>See</u> <u>Jordan</u>, 458 F.3d at 340-43.

Furthermore, for the reasons set forth above, Smith has not provided direct or circumstantial evidence demonstrating that either of her claimed protected activities (the call or her rebuttal letter) actually motivated her termination. It is important to remember that the heart of a Title VII violation is that the presence of actual discriminatory intent on the part of the employer formed at least part of the motivation for the adverse action. <u>See</u> <u>Hill</u>, 354 F.3d at 284. Therefore, if an individual fails to establish that the protected activity was the cause of the adverse employment action, she necessarily cannot succeed in proving discriminatory intent, because she has failed to demonstrate that the retaliatory motive formed part of the basis for the adverse employment action. <u>See</u> <u>Guion v. England</u>, 545 F.Supp.2d 524, 533 (E.D.N.C. 2008). Smith's claim of discrimination relies solely on tenuous inferences and vague allegations, which are insufficient to sustain a complaint in the face of a motion for summary judgment. <u>See</u> <u>Beale</u>, 769 F.2d 214.

### III. CONCLUSION

For the foregoing reasons, the DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 21) will be granted.

The Clerk is directed to send a copy of this Memorandum Opinion to the plaintiff.

It is so ORDERED.

                              _____ /s/      _REP_

                              Robert E. Payne
                              Senior United States District Judge


Richmond, Virginia
Date:  April 13, 2009

29